May it please the Court. My name is Michael Stimson of Jones Day. I am pro bono counsel for Petitioner Luis Solorzano-Mateo. There are two reasons that this Court should vacate the removal order against Mr. Solorzano. First is due process. The Immigration Court never mailed him his notice of hearing. Let me ask a question about that. That's a very interesting point and may be accurate. The difficulty is that I, a little difficulty I see is what was raised by the government on that 20HA letter. Yes. When he appeared in front of the IJ, he said there's no indication that a notice of hearing was ever mailed. Correct. Good. When he got to the BIA, he says to them, and the IJ said it was, he gets to the BIA and says it appears the notice was mailed, that is, to his home address. Now, so the BIA, logically enough I should think, says the notice was mailed to his home address. Right. It sounds a little bit like sandbagging for a party to come before an appellate body and say, Well, it appears that so-and-so is true, and then when the appellate body treats it as true, the person says, Ha-ha, you went and decided it was true, and therefore I exhausted my remedy. That's a little troublesome. Would you like to address that? I certainly would, Your Honor, and thank you for bringing it up. In fact, the Board did not rely on Mr. Solorzano's attorney's prior counsel's statement in his brief that it appeared that the hearing notice was mailed. The Board didn't rely on that. The Board, we, it's hard to hear. It says that the notice was mailed. Pardon me? It says, NOH was mailed to the address of which Respondent appears he reside in. But the Board didn't say that that Respondent concedes that it was mailed. So, in other words, you're saying if I'm reading a brief from an attorney, and an attorney says, It appears that so-and-so is true, and so it's my statement of facts of the case, I state so-and-so is true, well, I made a big mistake, I should have said, the attorney concedes that so-and-so is true. Otherwise, I will be making a decision, I will be making a factual decision on my own. Is that true? That is exactly correct, Your Honor. That's exactly right. I got your point. Okay. Thank you. Sure. Well. Yes. Was this opinion by the BIA one of the variety? Was it a complete opinion, or did they adopt the IJ's opinion in any way? There's no explicit statement that the IJ's opinion was adopted. It appeared to me, reading it, that the Board made independent findings of fact. Of course, we know Boards can't make their own findings of fact, so there we go. The BIA can't make a finding of fact. It either accepts the facts, the finding of fact by the IJ, or it sends it back to the IJ for a finding of fact. So. Not having sent it back, then apparently it adopted the IJ's findings. Yes. After, of course, the counsel said to the Board, it appears the IJ's finding is correct. Well, prior counsel was incorrect, and I think the record is clear on that matter. It may be incorrect, but the point is we're talking about exhaustion of administrative remedies. Correct. Yes. Now, let me get to that issue, because I think that's important, exhaustion of administrative remedies. First of all, the Board doesn't have jurisdiction to adjudicate constitutional issues, such as Mr. Sullivan's. But it certainly has jurisdiction to adjudicate the facts. I mean, what is peculiar here is that the Board didn't just say in passing that it was mailed. I mean, they went into some length to say that it was mailed with regard to claiming that the record reflects that it was sent by regular mail. In fact, if you look at the record, it doesn't particularly reflect that. But it so it's, as you say, it wasn't really relying on what the lawyer said, but the lawyer did say it. Correct. And this Court can review that finding. And the question is whether you apply, frankly, whether you apply a de novo standard, and so you're looking for clear, unequivocally convincing evidence that it was mailed, or even if you apply a substantial evidence standard, there is no evidence that that hearing notice was mailed. It's a question of exhaustion. Correct. We're not talking about whether the BIA had evidence in front of it. That's not the point. Well, let me question of exhaustion of the remedy. The BIA, if the consul said to the BIA, look, this notice was not mailed, there you go. The BIA has got it in front of it, and it can say, you know what, it wasn't. We're sending it back to the IJ. It could do lots of things. It's not a constitutional problem. Of course it could decide it. Yeah, I understand that. But having found on the record that the notice was mailed, having made that finding, the Board did exhaust his due process remedy. The Board doesn't make findings. The Board either accepts what the IJ said or sends it back. The regulations are quite clear, and we have cases that say the Board can't make its own fact findings. It either has to accept the reviews for clear error, it accepts what the IJ said, or it sends it back. Well, it apparently did accept what the IJ said. Yes, after you conceded it. Okay. I understand your point. I don't want to take any more of your time. One last point on the jurisdictional issue, though. Mr. Solorzano's due process claim is really inextricably intertwined with his claim under Sembering. They're both seeking the same relief.  status. And also, the claim of the receipt question itself turns on the mailing question. So to some degree. Yes, that's absolutely correct. Yes. So by raising the receipt question, he was necessarily raising the mailing question. I think that's right. I mean, if you – whether you determine – whether you review the record under Mr. Solorzano's Sembering claim, which nobody's challenging this Court's jurisdiction on that, and you find that the hearing notice wasn't mailed, you get the same result. So it's just really what standard of review are you going to apply. And frankly, in this case, it doesn't matter what standard of review you apply, whether it's substantial evidence or denial of motive. I'm not understanding why you think this has anything to do with the standard of review. I mean, as Judge Fernandez says, if we thought it wasn't exhausted, it wouldn't be here. I'm sorry. You thought it was – I don't understand why the standard of review turns on this, whether it's a due process claim or not, or why are you raising the standard of review? Oh, if you don't have jurisdiction to entertain – to decide Mr. Solorzano's due process claim, if you don't have jurisdiction on that, it doesn't matter, actually, in this case. And so maybe I should just turn to the Sembering factors, and we can save a little time on that. So let's go to the merits, all right? So again, even under a substantial evidence standard, there's just no evidence that that hearing notice was mailed. The only piece of evidence anyone considered in this case to determine whether the hearing notice was mailed was the notice itself. And I would direct your attention to the Certificate of Service on the notice. So that's page 116 of the administrative record. The only legible marking on that hearing notice is the date stamp. There's no signature. There's no method of service. And there's no indication of who was served. Now, one of the things that troubled me was that, obviously, this has been Xeroxed lots of times. Is the original anyplace? I mean, the original – I understand the original original doesn't exist. But the one that was in the record originally, is it any clearer than what we've got? I have never seen the original, Your Honor, so I don't know. I was provided with the same administrative record as this Court was. But there is one thing that's clear. There's no envelope that was photocopied and put in the file, right? Do you have any idea what's usual? What's usual? Well, I think I do. I guess there are other cases in which the envelopes do appear. Absolutely there are. Right. Yeah. I think that it might be instructive if the Court could look at pages 63 to 64 of the administrative record. That is what I consider to be an adequate certificate of service. And that's the certificate of service that accompanied the judge's decision on Mr. Solorzano's motion to reopen. And that clearly shows the signature, the method of service, the recipient, and the mailing receipt. And Mr. Solorzano did get that one, actually, through his attorney. He was represented by counsel at that time. Okay? Now, I've got 22 seconds remaining. So let me just say – So your point with regard to Sembring, is that without the evidence of mailing, there's no presumption of receipt? Is that your basic point? That's correct. That's absolutely correct, yes. And that's my time. Thank you. Thank you very much. Good morning. May it please the Court, my name is Theo Nickerson. And I represent the respondent, United States Attorney General Eric H. Holder, Jr. I'm very honored to be arguing in the prestigious Ninth Circuit today. Mic up a little bit. Yeah, I was wondering. Okay. Okay. Is that better? A little, yeah. The government respectfully contends, as an initial matter, that the court lacks jurisdiction over petitions. Now, you've never raised this until a 20HA letter, right? Right. The question of whether there's jurisdiction here is at least debatable. Would you say that? In other words, it was raised before the – it was clearly raised before the IJ. The Board clearly and, you know, in several sentences decided it. Ordinarily, if the Board decides something, the exhaustion is adequate. And so, it seems to me that where there's at least a view one could take of the record, which would be adequate exhaustion, can you just wait until the end of the case to raise it? It's the government's position that this, in fact, was not raised adequately before the Board to put the Board on notice to decide this issue. But the Board wrote several sentences about it, citing the record and so on. But not about the hearing notice not being mailed. Yes, about it not being mailed. There was never any argument made before the Board that it wasn't mailed. There may have been an argument, but it says the record reflects that the notice of hearing was sent to the respondent by regular mail, Exhibit 3, to the address he provided in the Form I-30, with a citation to that, and included the date and time of his hearing. The NOH was mailed to the address at which the respondent has recited since 1998. There is no indication that the NOH was returned to the Immigration Court. All of that appears to be a discussion of why they think that it was actually mailed. Well, also, you know, that's my second point, is that, first, that we would argue that that was that wasn't sufficient because the – because in contrast to – But I asked you a specific question which you haven't answered me, which is that you didn't raise to us this problem, even though the mailing issue was briefed in the opening brief and briefed in the reply brief, and you, the government, never mentioned it to us until a 28-J letter about three days ago. And my question is, is that I understand that when something's jurisdictional, it's jurisdictional, but this kind of jurisdictional, which depends on the view one takes of the record, seems to me to be something that you have to raise. I'm not aware of any requirement that the – Because otherwise, we can take – we can assume that you're taking the view that there was, in fact, adequate exhaustion given the fact that the Board decided it and go on with our lives, which, frankly, is what we did until you sent this out three days ago. Right. Well, we felt that upon reviewing the brief before oral argument that it was an issue that needed to be considered during an oral argument, and that's why we cited it and added it to our record. It's not our only argument. It's, you know, like you said, it's not dispositive, but it is something to be noted that it never was raised. The government – Well, no, not never was. It's not dispositive. I'm not following you. Look, I understand that jurisdiction can be raised at any time. In fact, we have to raise it sua sponte if we think there's a jurisdictional problem. I understand all that. But it seems like at least pretty bad practice to raise what you say is a slam dunk at the end of this case, a little one-page 28-J letter to us at the very end of the case. I understand that point. I don't really have any response in terms of just things – arguments get lost on us, and we make mistakes as well, and we probably should have raised that earlier. But it is, in fact, a jurisdictional issue. In fact – and I'll give you a little extra time because we're taking up time with this. But in fact, it was raised before the IG, and it was decided by the BIA. And if the BIA decides it, that's ordinarily sufficient. So the only ground on which you can say that it wasn't exhausted was this sentence in the brief before the BIA. Is that right? That's correct. And which is a little murky because it says it doesn't appear, but it doesn't say it was. It was. It appears to have been mailed, but it doesn't say – which could be taken to mean there's a piece of paper that says it was mailed. But it doesn't say it was mailed. Right. Okay. Okay. However, when you look over the Board's decision and the way that we briefed this case, it was basically just focusing on the presumption of delivery and whether the petitioner properly rebutted the presumption of delivery. And it seemed then, when I went back over to prep for this case, because I'm not the attorney that briefed it and I wanted to argue, then I felt that the exhaustion argument needed to be raised. We raised it at that time, as soon as I was assigned to the brief. So that's the first and foremost that we just put that out there. But I still am prepared to argue, even without – even assuming jurisdiction, that the record does support that it was mailed. The respondent pointed to AR-116, which is, like you said, a photocopy. Originals do exist. And the government contends that it would be his burden to get an original copy to show that it was not mailed. Wait a minute. It's the government that produces the administrative record, right? That's correct. So how is he supposed to do that? Because he's challenging whether it is a legal presumption that the long-term Yes, but the record, the administrative record is whatever you produce as the administrative record. That's the record before us, is it not? There is a clear marking on page 116 next to mailed, as well as a date stamp. And it could be seen that there's something indicated by the signature. And the issue isn't whether that is sufficient. The issue is whether it was arbitrary or rational or contrary to law for the board to show that – for the board to assume that there was notice when there is record evidence that shows notice and that the government is entitled to a presumption of regularity that hearing notices are put in the mail. And there is – it was not sent back as undeliverable. Wait a minute. Are you arguing that if there – that there is just a presumption that a notice is put in the mail? Are you arguing there is something in this record that demonstrates it was put in the mail? Which are you arguing? There's a – well, I'm arguing that there's a legal presumption and that there's nothing in the record to rebut that presumption. Well, but wait a minute. The presumption of receipt arises ordinarily from proof of mailing. So there has to be proof of mailing, not a – if you presume mailing and you presume receipt, then you don't – then you're presuming the facts and you have nothing left. Right. I got you. And I actually meant there's a presumption of regularity within the immigration court. My understanding of that with regard to general law is that there's a presumption of regularity if there's some proof of the – if there is some proof put in the record of what the regular system is. But we don't have that here. If you had a form affidavit that said this is the way we handle this stuff in, you know, in the immigration court. We first do this, we then do that, and this person does this. You know, then you might have a presumption of regularity. But there is no process in the record here of regularity. There's no – there's no evidence of a system. But it wouldn't – the government is contending that it wouldn't be a presumption if we had to prove evidence. Well, you wouldn't have to prove it in any particular case, but you could prove that you had a system. But you haven't done that. But there – but that's the presumption of regularity within the – within the system that original – Yes, that you regularly follow some system. But we don't know what the system that you regularly follow is. You haven't told us that. I'm sorry? It's date stamped and circled mailed by the word – and by the word mailed. The problem is – the problem is that we all know that sometimes things are not mailed. I mean, in fact, it is not unusual – and it's unusual, but not unheard of for institutions, including this Court, to not mail things even when the records show they are mailed. I know of those instances. So if there's no proof of any – there's no individual proof of mailing. Nobody here has signed anything. I mean, maybe there's a check next to mailed, but it's not so obvious. And there's also an indication on that piece of paper that it was mailed to someone else other than him. There's something – if there's a check that – next to alien care of custodial office, or maybe – it's as much a mark as any of the other marks. And I don't know how we can say that this is proof of mailing. Understandably that, you know, this is not – this is not very clear. And the government could request – this Court's request an original of the hearing notice. However, I would also point to the immigration judge's order in absentia after his failure to appear. That was also sent to his house, putting him on notice that he now has an outstanding removal order. And in Sundeering, the alien showed up five days after court. This petitioner was personally served an NTA and with his signature and placing his address on it so that he knew he was in proceedings and that he would be having an original hearing. When he never received anything, he waited for two years and didn't do anything until his mom was given a letter ordering him to appear to the custody of DHS, or she would be ordered to pay a fine. But, Pat, you did receive it for two years because you didn't send it to him for a couple years. Isn't that right? Even though he requested an immediate hearing, he didn't get an immediate hearing. He got an immediate hearing some substantial time later. Is that not right? A request for an immediate hearing, I think, Edwin, the immigration courts are so bogged down. No, I understand that. But you said that he should have realized when he didn't get the notice. But, in fact, you didn't send him the notice for quite a while. But at that time, within that time, he didn't act between the time he got these two government documents and an absential order is clear with the certificate of service that was received or that was mailed. And that's two government documents that were mailed to his home. And he never once responded or presented himself to the immigration court or appeared, you know, in order to pursue. Isn't the government required to show that there's clear and equivocal and convincing evidence that the notice was sent? Yes. And what you're suggesting is because a later notice was not received, that that somehow weighs into our consideration as to what the outcome of this case should be. Well, actually, it was more asserting that it should weigh into the presumption of mailing. Because in this administrative record, we have evidence that every other court document has been mailed. And we should presume that we should presume that the government officials that produced the U.R. records and that produced the hearing notices act within their regularly discharged duties in mailing the hearing notice. You know, you're sort of repeating arguments in your almost three minutes over your time. And you seem to be saying the same things. OK, well, it's the government's contention that I'll sum up that there's no jurisdiction over his unexhausted claim that the hearing notice was never mailed. And in any event, the record shows that the notice was mailed. Thank you. Thank you very much. Castle, I'll give you a minute because she went over her time. Thank you, Your Honor. Real quickly, I would like to address this later notice that wasn't received. Excited to talk about that. That was A.R. 114, I believe, that the government's counsel was talking about, which is the deportation order itself. And I hate to be arguing that lightning struck twice, but I'm going to say that lightning struck twice. It's in the same place, but that's what happened here. Look at the certificate of service that they are 115. Whoever signed this certified that. Well, first of all, they didn't indicate the method of service at all. And they certified that service was provided to the alien, the alien care of custodial officer. Mr. Solizano wasn't in custody at the time. The alien's attorney or representative, he was not represented by counsel at the time. And the I.N.S. So this is a worthless certificate of service. Obviously, at least two of these people were not served because they didn't exist. And there's, again, no envelope or stamped indication that this certificate that this deportation order was ever put in the mail. I think that neither one, either the hearing notice or the deportation order was actually ever signed. Thank you very much. Thank both of you for your argument. The case of Salazar Mateo versus Holder is submitted.
judges: Hernandez, Fernandez, Berzon